1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10  JAMES BARRY,                        )   Case No. CV 05-6874-PJW
                                        )
11                 Plaintiff,           )
                                        )   MEMORANDUM OPINION AND ORDER
12          v.                          )
                                        )
13  JO ANNE B. BARNHART,                )
    Commissioner of the                 )
14  Social Security Administration,     )
                                        )
15                 Defendant.           )
    _____)

16

17                                  I.

18                             INTRODUCTION

19       Plaintiff brings this action challenging the decision by

20  defendant Social Security Administration ("the Agency"), denying his

21  application for Supplemental Security Income benefits ("SSI").  He

22  asks the Court to reverse the Agency's decision and award benefits or

23  remand the case to the Agency for further proceedings.  For the

24  reasons discussed below, the decision of the Agency is REVERSED, and

25  the action is REMANDED for further proceedings consistent with this

26  opinion.

27

28

II.

FACTS

A.    Plaintiff's Personal History and Work History

Plaintiff was born on August 23, 1962, and was 42 years old at the time of the administrative hearing.  (Administrative Record ("AR") 50, 389.)  Plaintiff completed high school.  (AR 392.)  He has previous work experience as a laborer, security guard, and handyman. (AR 62, 76.)  Plaintiff contends that he became unable to work on August 15, 1990, due to seizures, back pain, and depression, although Plaintiff stated that he last worked on October 18, 2000.  (AR 75.)

B.    Plaintiff's Medical Condition and Treatment

Plaintiff claims that he suffers from epilepsy and a back injury. (AR 75.)  He contends that his condition limits his ability to work because he has unpredictable seizures and disabling back pain.  (AR 75.)  According to Plaintiff, he is under medical care and taking Dilantin for his condition.  (AR 77.)

Plaintiff maintains that he cannot lift anything heavy, and that his right leg goes numb, making him unable to walk and rendering him bedridden for days.  (AR 116.)  He also claims that he needs help with shopping and laundry, and needs to be reminded to shower and shave. (AR 116, 118.)

Plaintiff's medical records show that he had reported having frequent seizures, was diagnosed with epilepsy or a seizure disorder, and was medicated with Depakote and Dilantin.  (AR 134, 139, 142, 149, 176-85, 273, 355, 358-367.)  In August 2004, his seizure disorder was reportedly improving.  (AR 374.)  At this same time, Plaintiff complained to doctors of lower back pain, and a lumbar spine MRI showed that Plaintiff had spondylosis and "early dessication" at the

2

L4-L5 disc without stenosis or nerve root displacement. (AR 351-52, 355, 357-58, 378, 381.) Medical records also showed that Plaintiff was taking Vicodin (a pain reliever), Flexeril (a muscle relaxer), Lopid (to treat high cholesterol), Prevacid (to treat acid reflux), and Vioxx (an anti-inflammatory). (AR 358-67, 372.)

Plaintiff also complained of depression, and was prescribed Prozac. (AR 358, 379, 383-85.) At the time of his application, Plaintiff was seeing a psychologist to deal with his depression and anxiety. (AR 247-48, 319-20, 331, 350, 373, 379, 383-85.) The psychologist assessed Plaintiff as being mildly mentally retarded and suffering from chronic depression with anxiety and social phobia. (AR 384-85.) Plaintiff also reported a history of alcoholism and drug use. (AR 281, 330-31.)

In January 2002, Plaintiff was examined by state agency internist Dr. Jagvinder Singh. (AR 198-202.) Plaintiff reported to Dr. Singh that he suffered from epilepsy and lower back problems. (AR 198.) Dr. Singh diagnosed Plaintiff with epilepsy, a history of back pain, and a possible mood disorder. (AR 201.) He found no physical limitations related to Plaintiff's low back pain and noted that Plaintiff used no assistive device, but limited him to six hours of standing or walking and lifting 50 pounds occasionally or 25 pounds regularly. (AR 201.) Dr. Singh recommended that Plaintiff be further examined by a psychiatrist because of his anxious mood and flight of ideas. (AR 201.)

In May 2003, Plaintiff underwent a psychiatric evaluation by state agency psychiatrist Dr. Harald S. Krueger. (AR 279-83.) Dr. Krueger noted that Plaintiff appeared depressed, and had some

1  limitations in cognitive and intellectual functions.  (AR 282.)  Dr.

2  Krueger diagnosed Plaintiff with depression, and noted difficulties

3  with concentration, persistence, and pace.  (AR 282.)

4      Plaintiff was also examined by psychologist Leslie A. Roman.  (AR

5  205-10.)  Dr. Roman diagnosed Plaintiff with a substance-induced mood

6  disorder.  (AR 209.)  She found that he had "adequate" ability to

7  perform simple and repetitive tasks, but that his ability to perform

8  detailed and complex tasks may have been slightly impaired.  (AR 210.)

9  She also found that Plaintiff's psychological symptoms would impair

10  his ability to complete a normal work day or week, and that his

11  abilities to deal with other people and the usual stresses of the

12  workplace were limited.  (AR 210.)

13  C.    The Administrative Background

14      Plaintiff filed an application for SSI on November 9, 2001.  (AR

15  50-53.)  That application was initially denied on July 16, 2002, and

16  again on reconsideration on July 17, 2003.  (AR 37-44.)  Thereafter,

17  Plaintiff requested a hearing before an administrative law judge

18  ("ALJ"), which was granted, and a hearing was held on October 27,

19  2004.  (AR 45, 389-404.)

20      Plaintiff testified at the hearing that his most recent work was

21  as a security guard for five months in 2000, a job that involved

22  considerable standing and walking.  (AR 392-93.)  Plaintiff previously

23  had irregular work doing odd jobs and handyman work.

24      The ALJ questioned Plaintiff regarding his use of a cane at the

25  hearing.  Plaintiff testified that he used it because his "back was so

26  messed up" it hurt when he walked and his right leg would go numb.

27  (AR 393.)  Plaintiff testified that a doctor had prescribed use of a

28  cane, and that he had been using it for a couple of years.  (AR 393-

4

94.)  He testified that he carried his cane on the right side for pain and numbness in his right leg, and that he had been instructed to use it that way by his doctor.  (AR 402-03.)

Plaintiff gave confusing testimony regarding his back pain and whether his doctor had recommended surgery.  (AR 395.)  Plaintiff testified that he was using Vicodin, Prozac, Flexeril, Vioxx, and Depakote.  (AR 396.)  Plaintiff testified that he had been having 10 to 15 seizures per month, but that after his doctor increased his Depakote dosage, the frequency had dropped to "[m]aybe five or six a month."  (AR 396-97.)

Plaintiff testified that he used to be a "hard core alcoholic," but that he had slowed down and at the time of the hearing drank "very seldom."  (AR 397-98.)  He testified that, in addition to his physical problems, his depression prevented him from working.  (AR 398.) Plaintiff testified that he tried to commit suicide after the death of his daughter in 1989, and that he sometimes had suicidal thoughts. (AR 398-99.)

Plaintiff explained that he lives alone in a mobile home, and that he did his own cooking and cleaning.  (AR 397, 400-01.)  He testified that he spends his days watching T.V., listening to music, playing cards, sleeping, walking in the yard, visiting a neighbor, and talking to or visiting relatives.  (AR 399-400.)  He testified that he did not drive because he did not have a car and because he feared having a seizure.  (AR 400.)

Plaintiff claimed that he could only sit for 10 to 15 minutes due to leg stiffness, and that he could stand for "[m]aybe 10 minutes at the most without falling."  (AR 402.)  He testified that he could only walk five to ten feet before he would have to stop and sit down.

5

1    The ALJ then questioned the vocational expert, Ruth Arnesh.  Ms.

2    Arnesh classified Plaintiff's past work as a security guard as light

3    exertion, semi-skilled work.  (AR 403.)  The ALJ then presented two

4    hypotheticals.  In the first, the ALJ asked the vocational expert to

5    assume that Plaintiff had the residual functional capacity for medium

6    work, with restrictions for seizures and limitation to "simple work."

7    (AR 403.)  The vocational expert testified that Plaintiff would be

8    able to perform his past work as a security guard.  (AR 403.)  The

9    second hypothetical added requirements for two to three unscheduled

10   15-minute breaks per day.  (AR 403-04.)  The vocational expert

11   testified that with this limitation Plaintiff would not be able to

12   perform his past work or "sustain any type of gainful activity."  (AR

13   404.)

14       The ALJ issued a decision denying Plaintiff's application for SSI

15   on November 17, 2004.  (AR 19-23.)  The ALJ analyzed Plaintiff's

16   claims under the Agency's five-step sequential evaluation process.  At

17   step one, he found that Plaintiff had not engaged in substantial

18   gainful activity since his alleged onset date.  (AR 20, 22.)  At steps

19   two and three, he found that Plaintiff had depression and spinal

20   spondylosis, and that those impairments were "severe," but that they

21   did not meet or equal a Listing.  (AR 20, 22.)

22       The ALJ found that Plaintiff's alleged limitations were not fully

23   credible because they were not supported by the medical evidence, and

24   were inconsistent with his sister's statements and his own testimony

25   regarding his daily activities.  (AR 21.)  The ALJ further noted that

26   Plaintiff's testimony regarding seizures was "vague and unclear, which

27   suggests that he was not speaking forthrightly."  (AR 21.)  He also

28   observed that Plaintiff's use of a cane undermined his credibility

6

1  because Plaintiff testified that the cane had been prescribed by his
2  doctor and there was no evidence that this was true.  (AR 21.)

3      The ALJ adopted the physical residual functional capacity
4  assessment formulated by a state agency consultant, finding that
5  Plaintiff could perform a full range of medium-exertion work, and
6  could lift 50 pounds occasionally and 25 pounds frequently.  (AR 21.)
7  The ALJ also found that Plaintiff could stand and walk for six hours
8  in an eight-hour day.  (AR 22.)

9      With respect to Plaintiff's mental residual functional capacity,
10  the ALJ accepted the opinion of an examining psychiatrist, concluding
11  that Plaintiff could perform simple, repetitive tasks, respond
12  appropriately to people in the workplace, and respond appropriately to
13  normal workplace stressors and rules regarding attendance and safety.
14  (AR 20.)  Based on the findings and conclusions of another state
15  agency psychiatrist, the ALJ concluded that Plaintiff was mildly
16  restricted in activities of daily living and maintaining social
17  functioning, had moderate difficulties maintaining concentration,
18  persistence, and pace, and had had no episodes of extended-duration
19  decompensation.  (AR 20.)  The ALJ found that the only limitation on
20  Plaintiff's mental residual functional capacity was to perform
21  "simple, repetitive tasks."  (AR 22.)  At step four, the ALJ found
22  that Plaintiff could perform his past work as a security guard and was
23  not disabled.  (AR 22.)

24      Plaintiff requested that the Appeals Council review the ALJ's
25  decision.  (AR 11.)  On July 25, 2005, the Appeals Council denied
26  Plaintiff's request for review.  (AR 5-7.)  Plaintiff filed the
27  instant Complaint on September 23, 2005.

28

1

III.

2

ANALYSIS

3       Plaintiff alleges that the ALJ erred by failing to include all of

4  Plaintiff's limitations in the hypothetical question to the vocational

5  expert.   Plaintiff also contends that the ALJ erred when he concluded

6  that Plaintiff was not credible.   As explained below, the Court agrees

7  with Plaintiff that the ALJ did not include all of Plaintiff's

8  limitations in the hypothetical to the ALJ, but rejects Plaintiff's

9  challenge to the ALJ's credibility finding.[1]

10  A.    Standard Of Review

11       "Disability" under Agency regulations is defined as the inability

12  to perform any substantial gainful activity due to any "medically

13  determinable physical or mental impairment which can be expected to

14  result in death or which has lasted or can be expected to last for a

15  continuous period of not less than 12 months."   *See* 42 U.S.C.

16  § 423(d)(1)(A).   The Court may overturn the ALJ's decision that a

17  claimant is not disabled only if the decision is not supported by

18  substantial evidence or if the decision is based on legal error.

19  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).   "Substantial

20  evidence" is such "relevant evidence as a reasonable mind might accept

21  as adequate to support a conclusion."   *Id.*   It is "more than a mere

22  scintilla but less than a preponderance."   *Tidwell v. Apfel*, 161 F.3d

23  599, 601 (9th Cir. 1998).

24

25

26
          [1]   Woven into Plaintiff's portion of the 39-page brief are
27  numerous issues and sub-issues that Plaintiff claims require reversal.
    The Court has considered all of Plaintiff's arguments and addresses
28  only those which the Court finds merit discussion.

B.   <u>The ALJ Failed To Incorporate All Of Plaintiff's Limitations In</u>
     <u>His Hypothetical To The Vocational Expert</u>

Plaintiff contends that the ALJ failed to present a complete
hypothetical to the vocational expert. (Joint Stipulation ("JS") at
12-13.)  For the following reasons, the Court agrees.

An ALJ's hypothetical question to a vocational expert must
include all of a claimant's limitations and restrictions. *Embrey v.*
*Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *see also Thomas v. Barnhart*,
278 F.3d 947, 956 (9th Cir. 2002)(cautioning that, "[i]n order for the
testimony of a [vocational expert] to be considered reliable, the
hypothetical posed must include all of the claimant's functional
limitations, both physical and mental[,] supported by the
record")(citation and internal quotation marks omitted).  If it does
not, the vocational expert's opinion has no evidentiary value and the
ALJ cannot rely on it in reaching his decision. *Embrey*, 849 F.2d at
423.

The ALJ found that Plaintiff had "moderate difficulties
maintaining concentration, persistence and pace . . . ." (AR 20.)
The ALJ did not include this finding in his hypothetical question to
the vocational expert.  Instead, he asked the vocational expert to
assume "medium [residual functional capacity]," a "seizure
restriction," and a "limitation to simple work."[2] (AR 403.)  Based on
the vocational expert's conclusion that such a person could perform
Plaintiff's past work as a security guard, the ALJ concluded that
Plaintiff was not disabled. (AR 22.)

---

[2] A second hypothetical added as an additional limitation the
need to take unscheduled breaks to rest or after a seizure. (AR 403.)

9

1   While it is possible that the ALJ intended that Plaintiff's
2   moderate difficulties in maintaining concentration, persistence, and
3   pace be subsumed in the restriction to "simple work," that is not at
4   all clear.   Moreover, it seems evident that moderate limitations in
5   concentration, persistence, and pace could interfere with even "simple
6   work," whatever that is.

7   Because the hypothetical question that the ALJ posed to the
8   vocational expert did not include all of the limitations found by the
9   ALJ, the vocational expert's opinion had no evidentiary value.   *See*
10  *Embrey*, 849 F.2d at 423.   As a result, there is no support for the
11  ALJ's finding that Plaintiff could perform his past work, which was
12  premised solely on the vocational expert's opinion, and remand is
13  required.

14  Plaintiff also takes exception to the ALJ's finding regarding
15  Plaintiff's mental residual functional capacity.   Though the exact
16  nature of Plaintiff's complaint in this regard is unclear, it appears
17  that he is arguing that the ALJ should have incorporated all of the
18  consulting doctor's limitations into Plaintiff's residual functional
19  capacity assessment and that he left some out.

20  The ALJ is free to accept all of a doctor's opinion, or some of
21  it, or none of it.   *See, e.g., Andrews v. Shalala*, 53 F.3d 1035, 1039
22  (9th Cir. 1995)(explaining that ALJ is tasked with resolving issues
23  related to medical evidence).   In this case, the ALJ adopted the
24  consulting psychiatrist's opinion.   He then applied the consulting
25  doctor's findings to arrive at Plaintiff's residual functional
26  capacity.   Though the ALJ did not use the same language as the
27  consulting doctor, he incorporated the consulting doctor's opinion in

28

1  the residual functional capacity assessment.  This is what he was
2  supposed to do.

3       Plaintiff argues, based on a strained interpretation of the ALJ's
4  decision, that the ALJ "adopted [the consulting doctor's] opinion
5  limiting James Barry to simple instruction work."  (JS at 7.)
6  Plaintiff's contention is based upon his assertion that the consulting
7  doctor's finding that Plaintiff "can understand, carry out, and
8  remember simple job instructions," meant that Plaintiff was limited to
9  "simple instruction work."  (JS at 7.)  Plaintiff is incorrect.

10      As an initial matter, the ALJ did not adopt any opinion that
11 Plaintiff was limited to "simple instruction work."  Instead, as
12 reflected in his decision, the ALJ adopted the consulting doctor's
13 view that:

14      [Plaintiff] can perform simple, repetitive tasks; can
15      respond appropriately to coworkers, supervisors, and the
16      public; and can respond appropriately to normal workplace
17      stressors and rules regarding attendance and safety.
18 (AR 20.)  Presumably, the ALJ's finding that Plaintiff could perform
19 "simple, repetitive tasks" was based on the consulting doctor's
20 finding that Plaintiff was able to "understand, carry out, and
21 remember simple job instructions."  (AR 282.)  Plaintiff's claim of
22 error in this regard is rejected.

23 C.   The ALJ Properly Discounted Plaintiff's Credibility

24      Plaintiff challenges as "legally insufficient" the ALJ's finding
25 that Plaintiff was not fully credible, arguing that the ALJ found only
26 that the claimed extent of his limitations was not supported by
27 objective medical evidence and was inconsistent with his daily
28 activities.  (JS at 28.)  This claim is without merit.

                                    11

An ALJ must undertake a two-step analysis when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, he must determine if, pursuant to *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986), the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged. *Smolen*, 80 F.3d at 1281-82. Second, he must determine the claimant's credibility as to the severity of the symptoms. *Id.* at 1282. If the claimant produces objective medical evidence of an impairment and shows that the impairment could be expected to produce the symptoms alleged, the ALJ can only reject the claimant's testimony concerning the severity of the symptoms by citing specific, clear, and convincing reasons for doing so. *Id.* The ALJ may not discredit the claimant's testimony as to degree of pain merely because it is unsupported by objective evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991)(*en banc*).

In making a credibility determination, the ALJ may take into account, among other things: (1) ordinary credibility evaluation techniques; (2) unexplained or inadequately explained failure to seek or follow treatment; and (3) the claimant's daily activities. *Smolen*, 80 F.3d at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

In support of his finding that Plaintiff was not credible, the ALJ made several observations: (1) Plaintiff's vague and unclear testimony regarding his allegedly disabling seizures "suggest[ed] that he was not speaking forthrightly;" (2) Plaintiff's incorrect use of a cane and his normal unassisted gait on examination belied his claim

12

1    that such use had been prescribed by his doctor; (3) Plaintiff's claim
2    of disabling back pain was not supported by the doctors' notes, which
3    reported full range of motion, absence of spasm, tenderness, or
4    deformity, and intact muscle strength and sensation; (4) Plaintiff's
5    ability to live alone and take care of household chores was
6    inconsistent with his claims of complete disability and inability to
7    walk more than five to ten feet; and (5) Plaintiff's daily activities
8    as described by his sister, including regularly going outside the home
9    for walks and to visit family and using public transportation, were
10   inconsistent with the claimed extent of his impairments.  (AR 21.)
11   Taken together, these are clear and convincing reasons for
12   discrediting Plaintiff's testimony regarding the alleged severity of
13   his symptoms.  *See* SSR 96-7p; *Thomas*, 278 F.3d at 958-59; *Smolen*, 80
14   F.3d at 1284.  Plaintiff fails to refute the ALJ's findings about
15   Plaintiff's forthrightness, or the problems inherent in his testimony
16   about the use of a cane, arguing only that the lack of supporting
17   medical evidence and the ability to engage in simple daily activities
18   are insufficient bases for the ALJ's adverse credibility
19   determination.  The Court rejects this argument.

20        While Plaintiff claims that the absence of medical evidence is
21   "always legally insufficient," it is nevertheless a proper factor for
22   the ALJ to consider in making a credibility determination.  *See*
23   *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(holding that
24   "medical evidence is still a relevant factor in determining the
25   severity of the claimant's pain and its disabling effects").  The ALJ
26   set forth specific examples of how the medical evidence failed to
27   support Plaintiff's claim of a disabling back condition, noting
28   contradictory clinical findings, including the absence of stenosis or

13

1  nerve root involvement in his spondylosis, full range of motion,

2  intact muscle strength and sensation, and the ability to walk normally

3  without the cane Plaintiff claimed he needed.  (AR 21.)

4      The ALJ also made specific observations regarding Plaintiff's

5  daily activities, including his ability to live alone, and do his own

6  household chores.  (AR 21.)  Plaintiff's claimed daily activities, as

7  observed by the ALJ, are not only inconsistent with his claimed degree

8  of limitation, but are contradicted by his own testimony and his

9  sister's statements.  (AR 21.)  Plaintiff's claimed inability to walk

10 further than five or ten feet is inconsistent with his testimony that

11 he went for walks and visited relatives outside the home.  (AR 399-

12 400, 402.)  It is also inconsistent with his sister's statement that

13 Plaintiff leaves the home once or twice a day and uses public

14 transportation on his own.  (AR 110.)

15     Similarly, the ALJ observed that Plaintiff appeared to be less

16 than forthright when testifying about his seizures, and suggested that

17 Plaintiff was not truthful when he testified that his doctor

18 prescribed a cane and the manner in which he used it.  (AR 21, 402-

19 03.)  Along with the inconsistencies regarding his daily activities,

20 these observations are probative of Plaintiff's truthfulness, which is

21 what lies at the heart of the credibility determination.

22     Accordingly, considering all of the reasons provided by the ALJ

23 for discounting Plaintiff's credibility, the Court concludes that

24 there is enough there to support the ALJ's finding that Plaintiff was

25 not credible and that finding will not be disturbed.

26

27

28

                              14

IV.

CONCLUSION

For the reasons set forth above, the decision of the Agency denying Plaintiff's claim for SSI is reversed and the case is remanded to the Agency for further proceedings consistent with this decision.


IT IS SO ORDERED.

DATED:     March  8  , 2007.


_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\BARRY, J\Memo Opinion_Ord.wpd

15